[Crim. No. 19934. May 3, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL JAY COLLINS, Defendant and Appellant.

**COUNSEL**

James A. Hutchens, under appointment by the Supreme Court, and Hutchens & Rounds for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Keith I. Motley, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MOSK, J.**—Defendant Michael Jay Collins appeals from a judgment of conviction, claiming the conduct which produced his conviction was no longer a crime at the time the trial judge imposed sentence. He was indicted in November 1974 on fifteen separate felony counts, including one count of attempted burglary (Pen. Code, §§ 664, 459), six counts of burglary (Pen. Code, § 459), two counts of forcible rape (Pen. Code, § 261), three counts of assault with intent to commit rape (Pen. Code, § 220), and three counts of forcible oral copulation (Pen. Code, § 288a, as effective in 1975). A previous felony conviction was also alleged.

Pursuant to a plea bargain, defendant entered a plea of guilty to one count of oral copulation; in return, the allegations of commission of that crime by means of force and of a prior felony conviction were stricken, and the other 14 counts were dismissed. After a hearing in February 1975 the court suspended criminal proceedings, found the defendant to be a mentally disordered sex offender and committed him to Patton State Hospital for an indefinite period (Welf. & Inst. Code, § 6316).

While defendant was at Patton, the Legislature repealed Penal Code section 288a and enacted a new section of the same number which became effective on January 1, 1976. Although forcible oral copulation is still proscribed under the new section, the act of oral copulation between consenting, nonprisoner adults is not.

Criminal proceedings were reinstated in April 1976 when it was determined that defendant was no longer a danger to the health and safety of others. At that time he objected to the court's jurisdiction to sentence him because of the repeal of former section 288a. The court

overruled the objection and sentenced him to state prison for one to fifteen years, which it deemed to be "the term prescribed by law." Defendant was given credit for 556 days served at Patton.

I

Defendant insists the court erred in imposing sentence because the conduct which he admitted in pleading guilty was no longer punishable at the time of sentencing. On the basis of our decision in *People* v. *Rossi* (1976) 18 Cal.3d 295 [134 Cal.Rptr. 64, 555 P.2d 1313], we agree and accordingly reverse the conviction.

In *Rossi* the defendant was convicted of nonforcible oral copulation under old section 288a; before the judgment became final by lapse of the period for appeal, however, new section 288a took effect. In reversing the conviction, we held that when the Legislature repeals a criminal statute—or otherwise removes state sanctions from conduct formerly deemed criminal—its action requires the dismissal of pending criminal proceedings charging such conduct. Our holding in *Rossi* derived from the common law rule, early recognized in *Spears* v. *County of Modoc* (1894) 101 Cal. 303, 305 [35 P. 869], and often reaffirmed by this court, that the repeal of a criminal statute without a saving clause terminates all criminal prosecutions not reduced to final judgment. In *Sekt* v. *Justice's Court* (1945) 26 Cal.2d 297, 304 [159 P.2d 17, 167 A.L.R. 833], we discussed the rule's theoretical basis: it presumes the Legislature, by removing the proscription from specified conduct, intended to condone past acts.

*In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948], dealt with the impact on the common law rule of Government Code section 9608, the general saving clause. Section 9608 provides: "The termination or suspension (by whatsoever means effected) of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so terminated or suspended, unless the intention to bar such indictment or information and punishment is expressly declared by an applicable provision of law."

*Estrada* distinguished between amendments to criminal statutes that increase and those that mitigate the penalty imposed. We held that section 9608 defeats the presumption that the Legislature intended to pardon past acts when penalties are increased; in such cases, the saving

clause expresses the Legislature's intent that the defendant be punished under the old law rather than avoid punishment for conduct proscribed both before and after amendment of a penal statute. In the event of amendments mitigating punishment, however, we held that section 9608 does not alter the common law rule giving defendants the benefit of the mitigation; section 9608 is intended not to allow punishment beyond that which the Legislature has determined is appropriate for the conduct in question, but rather to prevent a defendant from escaping punishment when his conduct has been and remains within the condemnation of the law.

The intervening amendment discussed in *Rossi* did not merely mitigate punishment but removed all sanctions for conduct previously proscribed. We noted, however, that it would be untenable to give defendants the benefit of a reduction in punishment while denying them the benefit of a complete remission of punishment. Section 9608 does not compel such a result. Just as an amendment reducing punishment is a sufficient declaration under section 9608 to bar punishment beyond the reduced term, an amendment eliminating criminal sanctions is a sufficient declaration of the Legislature's intent to bar all punishment for the conduct so decriminalized. *Rossi* represents a logical extension of the principles developed in the line of cases dealing with the common law rule, as we recognized in reaffirming its holding in *Governing Board* v. *Mann* (1977) 18 Cal.3d 819, 829 [135 Cal.Rptr. 526, 558 P.2d 1].

 This case is clearly controlled by *Rossi.* Defendant's conviction had not been reduced to final judgment when new section 288a became effective—and under the new section the act that he admitted, and upon which his guilty plea and conviction were based, was no longer punishable.[1] It follows that the sentence cannot be allowed to stand.

---

[1] The People contend that *Rossi* is not controlling because the conduct of the defendant herein remained illegal under new section 288a. Although the allegation of force was stricken, it is argued, the facts underlying defendant's guilty plea—which the court must review to determine if his conduct was indeed criminal—demonstrate that the act of oral copulation was committed by means of force, and forcible oral copulation is still proscribed under the new section. This argument is patently without merit; it suggests we ignore both the substance of defendant's plea and the nature of his conviction. With the allegations of force stricken, defendant was charged with simple—not forcible—oral copulation. When he entered his plea of guilty he was asked by the court what he had done, and responded, "Placed my penis in her mouth." There is no hint in this response that force was used. Thus the act ultimately charged by the People, admitted by defendant, and upon which the conviction rests, is simple oral copulation—an act that is not proscribed by new section 288a.

## II

■ An issue remains, however, as to the proper disposition of this appeal. Defendant urges that we do not reverse his conviction but rather "correct" the sentence to "no penalty"; apparently he desires to avoid reinstatement of the 14 counts dismissed pursuant to the plea bargain. Defendant insists that he is not seeking to withdraw or in any other way disturb his guilty plea, and hence is not governed by the rule, discussed below, that dismissed counts may be restored when a defendant successfully attacks such a plea. We conclude, however, that the proper remedy is to reverse the judgment with directions to dismiss the count involved herein. A conviction cannot stand on appeal when it rests upon conduct that is no longer sanctioned. It is for this reason that we reversed the judgments of conviction in *People* v. *Rossi* (1976) *supra,* 18 Cal.3d 295, and *Spears* v. *County of Modoc* (1894) *supra,* 101 Cal. 303. This is the appropriate relief when a defendant relies on the noncriminal nature of his conduct.

## III

Since the question of reinstating some or all of the 14 dismissed counts is likely to arise on remand, it is appropriate for us to address this issue now for the guidance of the trial court. ■ To determine the effect of our reversal herein on the dismissed counts, we briefly examine the nature of plea bargaining. We summarized the process in *People* v. *Orin* (1975) 13 Cal.3d 937, 942 [120 Cal.Rptr. 65, 533 P.2d 193]: "The process of plea bargaining which has received statutory and judicial authorization as an appropriate method of disposing of criminal prosecutions contemplates an agreement negotiated by the People and the defendant and approved by the court. . . . Pursuant to this procedure the defendant agrees to plead guilty in order to obtain a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he were convicted of all offenses charged."

Critical to plea bargaining is the concept of reciprocal benefits. ■ When either the prosecution or the defendant is deprived of benefits for which it has bargained, corresponding relief will lie from concessions made. Thus, we held in *People* v. *Delles* (1968) 69 Cal.2d 906, 910 [73 Cal.Rptr. 389, 447 P.2d 629], that a judgment contrary to the terms of a plea bargain may not be imposed without affording the defendant an opportunity to withdraw his guilty plea. (See also Pen. Code, § 1192.5; *People* v. *Johnson* (1974) 10 Cal.3d 868 [112 Cal.Rptr.

556, 519 P.2d 604].) And we held in *In re Sutherland* (1972) 6 Cal.3d 666, 672 [100 Cal.Rptr. 129, 493 P.2d 857], that when the defendant withdraws his guilty plea or otherwise succeeds in attacking it, counts dismissed pursuant to a plea bargain may be restored. (See also *People* v. *Kirkpatrick* (1972) 7 Cal.3d 480, 487 [102 Cal.Rptr. 744, 498 P.2d 992]; *In re Crumpton* (1973) 9 Cal.3d 463, 469 [106 Cal.Rptr. 770, 507 P.2d 74]; *People* v. *Hill* (1974) 12 Cal.3d 731, 769 [117 Cal.Rptr. 393, 528 P.2d 1].)

The question to be decided, then, is whether the prosecution has been deprived of the benefit of its bargain by the relief granted herein. We conclude that it has and hence the dismissed counts may be restored.

■ The state, in entering a plea bargain, generally contemplates a certain ultimate result; integral to its bargain is the defendant's vulnerability to a term of punishment. We recognized this in the above quoted passage from *People* v. *Orin* (1975) *supra,* 13 Cal.3d 937, 942, and in *People* v. *West* (1970) 3 Cal.3d 595, 604 [91 Cal.Rptr. 385, 477 P.2d 409], when we first gave explicit approval to the process of plea bargaining: "Both the state and the defendant may profit from a plea bargain. The benefit to the defendant from a *lessened punishment* does not need elaboration . . . ." (Italics added.) ■ When a defendant gains total relief from his vulnerability to sentence, the state is substantially deprived of the benefits for which it agreed to enter the bargain. Whether the defendant formally seeks to withdraw his guilty plea or not is immaterial; it is his escape from vulnerability to sentence that fundamentally alters the character of the bargain.

Defendant seeks to gain relief from the sentence imposed but otherwise leave the plea bargain intact. This is bounty in excess of that to which he is entitled. The intervening act of the Legislature in decriminalizing the conduct for which he was convicted justifies a reversal of defendant's conviction and a direction that his conduct may not support further criminal proceedings on that subject; but it also destroys a fundamental assumption underlying the plea bargain—that defendant would be vulnerable to a term of imprisonment. ■ ■■ The state may therefore seek to reestablish defendant's vulnerability by reviving the counts dismissed.[2]

---

[2]The statute of limitations will not bar prosecution on any of the dismissed counts, as the indictment may be amended pursuant to section 1009 of the Penal Code to reinstate those counts. (See *In re Crumpton* (1973) *supra,* 9 Cal.3d 463, 469; *People* v. *Hill* (1974) *supra,* 12 Cal.3d 731, 769; *People* v. *Daniels* (1969) 71 Cal.2d 1119, 1143 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].) As we stated in our order to show cause in In re Zurica

■ ■ Under the circumstances posed herein, however, the defendant is also entitled to the benefit of his bargain. This is not a case in which the defendant has repudiated the bargain by attacking his guilty plea;[3] he attacks only the judgment, and does so on the basis of external events—the repeal and reenactment of section 288a—that have rendered the judgment insupportable. This court has long recognized that the state has no interest in preserving erroneous judgments (*People* v. *Henderson* (1963) 60 Cal.2d 482, 497 [35 Cal.Rptr. 77, 386 P.2d 677]) and that convictions should not rest on noncriminal conduct. Here external events and not defendant's repudiation undermined this plea bargaining agreement. Accordingly, we must fashion a remedy that restores to the state the benefits for which it bargained without depriving defendant of the bargain to which he remains entitled.

This may best be effected by permitting the state to revive one or more of the dismissed counts, but limiting defendant's potential sentence to not more than three years in state prison, the term of punishment set by the Community Release Board pursuant to the determinate sentencing act (Stats. 1976, ch. 1139, No. 9 West's Cal. Legis. Service, p. 4752, No. 6 Deering's Adv. Legis. Service, p. 300).[4]

We find precedent for the foregoing result in a line of cases based on principles of double jeopardy. Our concern there was specifically to preclude vindictiveness and more generally to avoid penalizing a defendant for pursuing a successful appeal. In *People* v. *Ali* (1967) 66 Cal.2d 277, 281 [57 Cal.Rptr. 348, 424 P.2d 932], we stated that "a defendant should not be required to risk being given greater punishment on a retrial for the privilege of exercising his right to appeal." And in *People* v. *Hood* (1969) 1 Cal.3d 444, 459 [82 Cal.Rptr. 618, 462 P.2d 370], we held, "had defendant not appealed, his maximum term would have been 14 years. To preclude penalizing him for appealing, the court may not impose a maximum sentence of more than 14 years if on retrial he is again found

---

(Crim. 13973, June 28, 1971), the court may "order the accusatory pleading amended to recharge any offenses that were initially charged but the charges of which were subsequently dismissed."

[3]Although as noted above it is not useful to inquire into whether the defendant repudiated his guilty plea when determining if the state has been deprived of the benefit of its bargain, it is a significant inquiry when determining whether the defendant ought to be permitted to enforce a plea bargain undermined by external events.

[4]Since the parties cannot bind the trial judge in his imposition of sentence, the bargain relates to defendant's vulnerability to sentence, not actual sentence imposed pursuant to the court's discretion.

guilty . . . ." (See also *People* v. *Henderson* (1963) *supra,* 60 Cal.2d 482; *People* v. *Schueren* (1973) 10 Cal.3d 553, 560-561 [111 Cal.Rptr. 129, 516 P.2d 833].) The concerns addressed in these cases apply as well to our decision herein. The defendant should not be penalized for properly invoking *Rossi* to overturn his erroneous conviction and sentence by being rendered vulnerable to punishment more severe than under his plea bargain.

The disposition herein substantially restores the agreement previously negotiated. It permits the defendant to realize the benefits he derived from the plea bargaining agreement, while the People also receive approximately that for which they bargained.

The judgment is reversed and the cause remanded for further proceedings in accordance with the views expressed herein.

Tobriner, J., Richardson, J., Manuel, J., and Newman, J., concurred.

**CLARK, J.**—I dissent from reversal of the judgment, and from part I of the majority opinion, for the reasons expressed in my dissenting opinion in *People* v. *Rossi* (1976) 18 Cal.3d 295, 304-307 [134 Cal.Rptr. 64, 555 P.2d 1313].

Bird, C. J., concurred.